## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CARLOS LAMPLEY (#445179)**                    **CIVIL ACTION NO.**

**VERSUS**                                       **17-621-SDD-EWD**

**J. BROWN, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 9, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CARLOS LAMPLEY (#445179)**                    **CIVIL ACTION NO.**

**VERSUS**                                        **17-621-SDD-EWD**

**J. BROWN, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are two Motions to Dismiss, one filed on behalf of Joyce Brown ("Brown")[1] and another filed on behalf of the East Baton Rouge Parish Prison ("EBRPP") and Johnny Scott ("Scott").[2]  For the reasons that follow, the undersigned recommends that the Motion to Dismiss filed on behalf of EBRPP and Scott be granted in part and denied in part and that the Motion to Dismiss filed on behalf of Brown be granted in part and denied in part.

## I.      Background

On August 29, 2017, Plaintiff filed the instant action alleging deliberate indifference to his serious medical needs by Defendants.  Specifically, Plaintiff alleges that Brown failed to treat him for his hernia and that Scott forced Plaintiff to carry heavy bags despite his reported medical condition and ignored Plaintiff's request for medical attention, which caused great pain when Plaintiff lifted the bags.  Plaintiff alleges as a result of the actions of Defendants, his condition worsened, and he spent months in pain.  Plaintiff seeks monetary and injunctive relief.

---

[1] R. Doc. 22. Defendant states that Joyce Brown was incorrectly identified as Nurse Practitioner J. Brown in the Complaint.
[2] R. Doc. 23.

## II.    Law & Analysis

### A.  Conversion of a Motion to Dismiss to Summary Judgment

Both Motions to Dismiss presently before the Court attach additional materials.   In considering a motion to dismiss for failure to state a claim, the Court cannot consider anything beyond the pleadings.  When additional material is attached, the motion  to dismiss may be converted to one for summary judgment; however, this conversion is not automatic.[3]  Rather, courts have discretion to determine whether to accept material outside the pleadings.[4]  The court's discretion to convert the motion is exercised based on whether the material outside the 12(b)(6) motion will facilitate disposition of the action.[5]  If the material is scanty, incomplete, or inconclusive, the court will likely refuse to convert the motion.[6]  If additional materials are considered by the court, the motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56.[7]

Here, the additional material should not be considered.  First, Plaintiff, proceeding *pro se*, has had no opportunity to conduct discovery to obtain records he may need to oppose a motion for summary judgment at this time, and evidence he may need is likely in the possession of Defendants.  Further, it is unclear whether the information attached to either Motion to Dismiss is "complete."  Additionally, the attached documents would not properly be considered even if the Motions were converted to motions for summary judgment.  Uncertified, unsworn documents are not appropriate for consideration in ruling on a summary judgment motion.[8]  The documents attached in support of each Motion to Dismiss are not properly certified.  Thus, the Motions should

---

[3] *See Metro Riverboat Assocs., Inc. v. Bally's La., Inc.*, Civil Action No. 99-2660, 2000 WL 351707, at *4 (E.D. La. 4/5/00).
[4] *Id.*; *see also Ware*, 614 F.2d at 415.
[5] *Id.*
[6] *Ware*, 614 F.2d at 415.
[7] *Metro Riverboat Assocs.,* 2000 WL 351707, at *4.
[8] Fed. R. Civ. P. art. 56; *Guidry v. Aventis Pharmaceuticals, Inc.*, 418 F.Supp.2d 835, 839.

not be converted to motions for summary judgment and the documents attached to the Motions should not be considered.

### B. Motion to Dismiss Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[9] and *Ashcroft v. Iqbal*,[10] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[11] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[14] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[15]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[16] Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[17] Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the

---

[9] 550 U.S. 544 (2007).
[10] 556 U.S. 662 (2009).
[11] *Bell Atlantic Corp*. 550 U.S. at 555.
[12] *Ashcroft*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544.
[13] *Id.*
[14] *Id.* at 679.
[15] *Id.* at 678 (internal quotation marks omitted).
[16] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[17] *Id.* (citation omitted).

pleader is entitled to relief."[18] The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[19] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[20] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[21]

### A. EBRPP

Section 1983 creates a cause of action against "[e]very *person* who, under color of any [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution."[22] Only a "person" may be sued for violation of an inmate's constitutional rights.[23] "[A] prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term."[24] Accordingly, the claims against EBRPP should be dismissed with prejudice.

### B. Official Capacity Claims for Monetary Damages against Johnny Scott & Joyce Brown

Defendants first argue that the official capacity claims against Scott should be dismissed. With respect to the monetary claims levied against Scott in his official capacity, 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state

---

[18] Fed. R. Civ. P. 8(a)(2).
[19] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).
[20] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[21] *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted).
[22] 42 U.S.C. § 1983 (emphasis added).
[23] *Id.*
[24] *Douglas v. Gusman*, 567 F.Supp.2d 877, 892 (E.D. La. 2008) *citing United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3rd Cir. 1973); *Cullen v. DuPage County*, No. 99-1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97-0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Sponsler v. Berks County Prison*, No. 95–1136, 1995 WL 92370, at * 1 (E.D. Pa. 1995); *Powell v. Cook County Jail*, 814 F.Supp. 757, 758 (N.D. Ill. 1993).

or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[25] In addition, in *Hafer v. Melo*,[26] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[27] Accordingly, the Plaintiff's § 1983 claims asserted against the Defendant in his official capacity for monetary damages are subject to dismissal. Though counsel on behalf of Brown failed to make a specific argument to dismiss Plaintiff's claims for monetary relief requested against Brown in her official capacity, it is appropriate to dismiss those claims *sua sponte*.[28]

### C. Individual Capacity Claims for Monetary Damages Against Scott and Brown

A jail official's treatment of a pretrial detainee is governed by the substantive protections of the Due Process Clause of the Fourteenth Amendment; whereas, upon conviction, such treatment is evaluated under the Eighth Amendment's prohibition against cruel and unusual punishment. The Due Process Clause protects the detainee's right to be free from punishment prior to an adjudication of guilt.[29] In this context, the violation of a detainee's interest in bodily integrity, through the denial of basic human needs such as reasonable medical care, can amount to punishment under the Due Process Clause.[30]

The appropriate standard to apply in analyzing a constitutional challenge by a pretrial detainee depends upon whether the challenge is an attack on a condition of confinement or a

---

[25] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[26] 502 U.S. 21 (1991).
[27] *Id*. at 25.
[28] The Notice attached to this Report and Recommendation provides a 14-day period for Plaintiff to file objections. To the extent Plaintiff objects to the *sua sponte* dismissal of his claims against Brown for monetary relief in her official capacity, this Report constitutes notice that this claim may be dismissed *sua sponte* and the objection period affords Plaintiff the opportunity to respond.
[29] *See Bell v. Wolfish,* 441 U.S. 520, 535–36.
[30] *Partridge v. Two Unknown Police Officers of the City of Houston,* 791 F.2d 1182, 1187 (5th Cir. 1986).

complaint about one or more episodic acts or omissions.[31]  A conditions-of-confinement case is a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement."[32]  In such case, the harm is caused by the condition or policy itself, and this is true, for example, where inadequate medical care, *as a whole,* results in intolerable conditions of confinement.[33]  In contrast to the foregoing, if a pretrial detainee is complaining of one or more particular acts or omissions by prison officials, the claim is characterized as an "episodic act or omission" case.[34]  An episodic case is presented when the decision of an independent actor, such as a doctor or nurse, is interposed between the detainee and the policy or practice of the local governmental entity that permitted the harm.[35]

The Fifth Circuit further explained how to distinguish between an episodic act or omission and a condition of confinement as follows:

> When a pretrial detainee's constitutional claim is based on particular acts or omissions by one or more jail officials, the difficult question is whether the challenged act or omission can be characterized as episodic. For the *Bell* test to apply, a jailer's act or omission must implement a rule or restriction or otherwise demonstrate the existence of an identifiable intended condition or practice. If a pretrial detainee is unable to point to such an established rule or restriction, then he must show that the jail official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice to which the *Bell* test can be meaningfully applied. Otherwise, in the absence of such a condition, practice, rule, or restriction, a jail official's act or omission can give rise to constitutional liability only if he was culpable, under an appropriate legal standard, with respect to the harm to the detainee.

---

[31] *Hare v. City of Corinth,* 74 F.3d 633, 643 (5th Cir. 1996).
[32] *Id.*
[33] *Cf., Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997).
[34] *Id.*
[35] *Hare v. City of Corinth,* 74 F.3d at 643.

Here, Plaintiff's claims are solely regarding acts and omissions of Scott and Brown. Plaintiff does not allege Scott or Brown were implementing any rule or restriction when they committed the acts and omissions complained of. Thus, Plaintiff's claims are properly classified in the episodic acts or omissions category.

When a claim is based upon a jail official's episodic acts or omissions, the proper inquiry is whether the official had a culpable state of mind in acting or failing to act.[36] Further, "a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer*."[37] *Farmer* lays out both an objective prong, and a subjective prong.[38] The objective prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[39] Second, under *Farmer's* "subjective" prong, plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind."[40] The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[41] Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[42]

---

[36] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996).
[37] *Id.*
[38] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).
[39] *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[40] *Id.*
[41] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*.
[42] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

### 1. Individual Capacity Claims for Monetary Damages Against Scott

With respect to Scott's actions, the pertinent allegations are as follows:  On approximately August 11, 2017, Scott ordered Plaintiff to pack his belongings to be moved.[43]  Plaintiff informed Scott that the bags were too heavy for Plaintiff to carry.[44]  Plaintiff thereafter complied and picked up his bags.[45]  After following Scott outside, Plaintiff dropped his bags "from being in to [sic] much pain."[46]  Scott again instructed Plaintiff to pick up the bags, at which time, Plaintiff informed Scott that Plaintiff had a swollen hernia and could not carry the bags.[47]  Scott responded, "I don't care, pick them up, I have a hernia to [sic]."[48]  Plaintiff again complied with Scott's orders, but after a few steps dropped the bags again.  Scott again instructed Plaintiff to pick up the bags. Plaintiff complied but after a few steps, once more dropped the bags.[49]  After dropping the bags for a third time, Plaintiff requested to see a doctor because "[i]t felt like my hernia had popped open or started to burst open."[50]  At that time, Scott once again made Plaintiff carry the bags and proceeded to escort Plaintiff to central booking, where Plaintiff was then "locked" in a cell for six hours.[51]

Considering the allegations of the Complaint in the light most favorable to Plaintiff, Plaintiff has sufficiently articulated a claim for deliberate indifference to survive dismissal at this stage of the proceedings.  This case may be analogized to *Reese v. Skinner*,[52] in which the Fifth Circuit held that a plaintiff had stated a viable claim for deliberate indifference when he alleged

---

[43] R. Doc. 1, p. 5.
[44] R. Doc. 1, p. 5.
[45] R. Doc. 1, p. 5.
[46] R. Doc. 1, p. 5.
[47] R. Doc. 1, p. 5.
[48] R. Doc. 1, p. 5.
[49] R. Doc. 1, p. 5.
[50] R. Doc. 1, pp. 5-6.
[51] R. Doc. 1, p. 6.
[52] 322 F. App'x. 381 (5th Cir. 2009).

that an officer forced him to perform duties that violated the plaintiff's medical restrictions.[53] Here, though Plaintiff does not allege he had any specific restrictions imposed upon him by the prison, Plaintiff alleges that he personally informed Scott of medical restrictions, specifically Plaintiff's inability to lift heavy objects due to a hernia. Further, as a result of attempting to follow Scott's orders, Plaintiff alleges that his medical condition worsened, as he "felt like [his] hernia had popped open."[54] Finally, Plaintiff states that when he asked Scott to see a doctor, Scott was unresponsive to Plaintiff's request. Scott's actions, as alleged in the Complaint, if proven, may rise to the level of a wanton disregard for Plaintiff's medical needs.

### 2.  Individual Capacity Claims for Monetary Damages Against Brown

With respect to the actions of Brown, the following alleged facts are pertinent. When Plaintiff was arrested in March or April 2017, he advised the medical staff at EBRPP that he had a swollen hernia and needed surgery.[55] One month later, Plaintiff was seen by Brown who examined him and advised that Plaintiff would be scheduled for surgery.[56] According to the Complaint, no treatment was rendered. After that first examination, for months Plaintiff continuously filled out medical request forms to see a doctor but did not receive any response.[57] After months of no treatment, Plaintiff was again examined by Brown.[58] Plaintiff reported that his "situation had gotten worse, and anytime that [he] coughed, talked loud, bend [sic] over, use the toilet, or try [sic] lifting heavy objects, even standing in the same position for an extended

---

[53] *Id.* at 382-83.
[54] R. Doc. 1, pp. 5-6.
[55] R. Doc. 1, p. 4.
[56] R. Doc. 1, p. 4.
[57] R. Doc. 1, pp. 4-5.
[58] R. Doc. 1, p. 5.

period of time it hurts unbareably [sic]."[59]  Brown offered Plaintiff medication, including pain pills and stated she would schedule Plaintiff for an ultrasound.[60]

Subsequently, the above incident with Scott occurred, after which Plaintiff repeatedly requested to see a doctor, which requests were ignored. Plaintiff also called his family and requested that they contact the medical department for him to report a medical emergency.[61] Brown told Plaintiff's family that Plaintiff would be seen by a doctor the following day.[62]  The following morning Plaintiff woke in extreme pain and with blood in his urine, still having not been seen by medical personnel.[63]  Plaintiff again requested to see medical personnel for a medical emergency, but Plaintiff was not seen for another two days.  When Plaintiff was examined, it was determined that Plaintiff had a swollen hernia.[64]  According to the Complaint, Plaintiff was examined but not offered treatment, and over the following weeks, Plaintiff continued to have "unbareable [sic] pain" and, eventually, blood in his urine.[65]

Considering the above alleged facts in the light most favorable to Plaintiff, his individual capacity claims for monetary damages against Brown should also be allowed to proceed at the present juncture.[66]  Based on the foregoing allegations, though Plaintiff was examined a handful of times, it appears as though he was not offered any treatment to alleviate his symptoms or remedy his condition.  Rather, he was only offered pain pills, which apparently were ineffective, and stool softener, which also appears to have been ineffective as Plaintiff continued to have pain when

---

[59] R. Doc. 1, p. 5.
[60] R. Doc. 1, p. 5.
[61] R. Doc. 1, p. 6.
[62] R. Doc. 1, p. 6.
[63] R. Doc. 1, p. 6.
[64] R. Doc. 1, p. 6.
[65] R. Doc. 1, p. 6.
[66] In addition to arguments regarding deliberate indifference, Brown makes arguments regarding the standard for supervisory liability.  Those arguments are misplaced.  Brown has been named for her actions and omissions regarding Plaintiff, not as a supervisor, which appears to be a mistaken fact in which some of Brown's arguments for dismissal are rooted.

using the restroom.   Further, as a result of not being treated, Plaintiff's states that his symptoms worsened.  Specifically, he developed blood in the urine and experienced constant pain.  While the medical records may ultimately establish that Plaintiff was provided with proper medical care, those records are not properly before the Court at this time and, as a practical matter, deliberate medical indifference claims often require a motion for summary judgment in order that additional evidence in defense of such claims may be introduced.  Considering Plaintiff's allegations and the liberal construction that is to be given to *pro se* pleadings, Plaintiff's allegations are sufficient at this stage of the proceedings, to state a claim upon which relief may be granted against Brown for monetary damages in her individual capacity.[67]

### D.  Claims for Injunctive Relief against Scott and Brown

Since Plaintiff has been transferred from EBRPP, he is no longer subject to the care and control of Defendants.[68]  The United States Court of Appeals for the Fifth Circuit has clearly and repeatedly held that a transfer from one facility to another generally renders moot any claims for injunctive relief with respect to an inmate's prior facility.[69]  Accordingly, inasmuch as Plaintiff is no longer confined at EBRPP, and is no longer subjected to any alleged wrongdoing at the hands of personnel employed at that facility, he has not made a showing of entitlement to injunctive relief and Plaintiff's claims for injunctive relief should be dismissed with prejudice.

---

[67] *See, e.g., Bailey v. E.B.R. Parish Prison*, Civil Action No. 12-224, 2015 WL 545706 (M.D. La. 2/9/15) (wherein the plaintiff was examined and treated but, according to the allegations of the complaint, the treatment was ineffective. Plaintiff also spent months in pain.  Court held that the allegations of the complaint were sufficient to survive the defendant's motion to dismiss).

[68] Plaintiff's latest filing has a return address of Dixon Correctional Institute.  R. Doc. 25, p. 5.

[69] See *Harman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).  See also *Kidd v. Livingston*, 463 F. App'x. 311, 314 (5th Cir. 2012); *Stern v. Hinds County, Mississippi*, 436 F. App'x. 381, 382 (5th Cir. 2001); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995); *Davis v. Wall*, 50 F.3d 1033, *2 n. 3 (5th Cir. 1995).

### E. Exercise of Supplemental Jurisdiction over Plaintiff's State Law Claims should be Declined

Finally, to the extent that Plaintiff asks this Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any potential state law claims, the exercise of supplemental jurisdiction should be denied. A district court is authorized to decline supplemental jurisdiction over such claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, based upon the record, it is appropriate for the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### RECOMMENDATION

**IT IS RECOMMENDED** that the Motion to Dismiss[70] filed by Scott and EBRPP be **GRANTED IN PART AND DENIED IN PART**, dismissing all claims against EBRPP with prejudice; dismissing with prejudice the claims for injunctive relief against Scott in both his individual and official capacities; and dismissing the claims for monetary damages against Scott only in his official capacity.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss[71] filed by Brown be **GRANTED IN PART AND DENIED IN PART**, dismissing with prejudice the claims for injunctive relief against Brown in her individual and official capacities.

**IT IS FURTHER RECOMMENDED** that the official capacity claims for monetary damages against Brown be dismissed with prejudice *sua sponte*.

---

[70] R. Doc. 23.
[71] R. Doc. 22.

**IT IS FURTHER RECOMMENDED** that this Court decline to exercise supplemental jurisdiction over any of Plaintiff's potential state law claims.

**IT IS FURTHER RECOMMENDED** that this matter be referred back to the magistrate judge for further proceedings on the remaining claims: Plaintiff's claims for monetary damages against Scott and Brown in their individual capacities.

Signed in Baton Rouge, Louisiana, on August 9, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

13